UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                        2:08-cr-88-FtM-29DNF

GURMERCINDO BELTRAN
_____

### OPINION AND ORDER

On October 8, 2008, United States Magistrate Judge Douglas N. Frazier submitted a Report and Recommendation (Doc. #37) to the Court recommending that Defendant's Motion to Suppress Evidence (Doc. #21) be denied.  Defendant's Objections to Report and Recommendation (Doc. #43) was filed on October 23, 2008.

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1) (2005); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)

(quoting H.R. 1609, 94th Cong., § 2 (1976)).  The district judge reviews legal conclusions *de novo*, even in the absence of an objection.  See Cooper-Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

## II.

The Court adopts the factual portion of the Report and Recommendation (Doc. #37, pp. 1-7) in its entirety, as supplemented below.  The Court will address the two incidents that are the subjects of the motion to suppress separately, as did the Report and Recommendation.

### A.  March 12, 2008 Incident

#### (1) Lawfulness of Detention:

The magistrate judge analyzed the lawfulness of the detention utilizing the framework provided by Terry v. Ohio, 392 U.S. 1 (1968).  Terry applies a two-part inquiry: First, the court determines whether the officer's action was justified at its inception, which turns on whether the officer had a reasonable suspicion that defendant had engaged or was about to engage in a crime.  Second, the court determines whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place, or whether the stop went too far and matured into an arrest before there was probable cause. United States v. Acosta, 363 F.3d 1141, 1144 (11th Cir. 2004). Defendant agrees that Terry provides the proper framework, and does

-2-

not dispute that the officers' actions were justified at their inception (Doc. #43, pp. 10-11, 12).  As the Report and Recommendation correctly found and as defendant agrees, the officers lawfully detained defendant as he exited the trailer, based on reasonable suspicion that he was involved in a burglary. (Doc. #37, p. 9.)  The Court also agrees with the Report and Recommendation that placing defendant in handcuffs was reasonable under the circumstances and did not convert the detention into an arrest.  (Doc. #37, p. 10.)

Defendant argues, however, that the second prong was misapplied in this case and he should have been permitted to leave once the officers had knowledge there was no burglary, i.e., prior to the arrival of the drug dog.  Defendant argues that while the Report and Recommendation applied the four non-exhaustive factors set forth in United States v. Gil, 204 F.3d 1347, 1351 (11th Cir. 2000), the application came to the wrong result.  (Doc. #43, pp. 10-15.)

The Court agrees with the analysis and result set forth in the Report and Recommendation.  The officers did not reasonably know that there was no burglary until the homeowner, who was in the hospital, verified this fact.  The officers were not required to believe the representations of Mr. Murphy, Williams v. City of Homestead, Fla., 206 Fed. Appx. 886, 888-89 (11th Cir. 2006), and under all the circumstances of this case acted reasonably in not doing so until they received the homeowner's verification.  Thus,

-3-

officers knew that there was no burglary about 45 minutes after defendant's detention began, or at about 11:30 a.m.  By that time, as the Report and Recommendation correctly found, the officers had reasonable suspicion that defendant was involved in narcotics offenses and his continued detention was justified on that basis. (Doc. #37, pp. 9-10.)  The Court further agrees with the Report and Recommendation's finding that the officers diligently investigated the burglary and the narcotics offense.  (Doc. #37, p. 10.)  Under the circumstances, which the officers had to sort out, detaining defendant for over an hour was not unreasonable.  E.g., Gil, 204 F.3d at 1350-51 (75 minutes reasonable under the circumstances). Therefore, defendant was properly detained through the time of the alert by the drug dog and seizure of the drugs from the vehicle. Defendant's objections to the contrary are overruled.

**(2) Seizures of Car Keys:**

Defendant argues that even if the detention was lawful, the seizure of the car keys was unlawful.  (Doc. #43, pp. 15-17.)  The testimony indicates that the car keys were seized from defendant twice, so the Court will analyze each seizure separately.

**(a) Seizure of Keys by Deputy Marotta:**

When defendant exited the trailer shortly after 10:43 a.m., he was detained by Corporal Daniel Kowal until the officers could figure out what was going on regarding the reported burglary. Corporal Kowal turned defendant over to Deputy Christopher Marotta,

-4-

who placed defendant in handcuffs and conducted a quick patdown on the outside of his clothing as safety measures. Deputy Marotta felt an object in defendant's left front pants pocket, asked what it was, and was told by defendant it was car keys. Deputy Marotta then reached into the pocket and removed the keys, and believes he placed the keys on the ground. Defendant was placed on the ground in the front yard, where he sat as he was joined by three others as they were brought out of the trailer. All four were handcuffed while being detained.[1]

Defendant does not object to the exterior clothing patdown, but argues that the seizure of the keys was unlawful. The Court agrees with the Report and Recommendation that the patdown of the exterior of defendant's clothes was lawful as a reasonably prudent safety measure under the circumstances facing the officers. (Doc. #37, pp. 11-12.) "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Hunter, 291 F.3d 1302, 1307 (11th Cir. 2002) (internal quotation omitted). The Court also agrees with the Report and Recommendation that the seizure of the keys by Deputy Marotta exceeded the scope of the lawful Terry patdown because there was no indication Deputy Marotta believed the keys were a

---

[1]A fifth person from the trailer, Nora Brooks, was arrested and taken to jail on drug charges.

weapon or contraband. (Doc. #37, p. 13.) See Minnesota v. Dickerson, 508 U.S. 366 (1993); United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) ("Terry search may continue when an officer feels a concealed object that he reasonably believes may be a weapon."). Therefore, the keys seized by Deputy Marotta will be suppressed unless they were properly seized later and their seizure was therefore inevitable.

**(b) Re-Seizure of Keys by Deputy Partin:**

Defendant was sitting in the front yard when Deputy Tod Partin arrived at 11:34 a.m. Deputy Partin testified that when he arrived Corporal Kowal told him that Nora Brooks had been arrested for narcotics-related charges and that she stated she had obtained cocaine from defendant. Deputy Partin was to maintain visual observation of the four subjects being detained in the front yard. As Deputy Partin did so, he asked defendant if the vehicle was his; defendant responded that it was his sister's vehicle. Deputy Partin then asked defendant if he had a key to the vehicle, and defendant responded that he did.

Deputy Dan Muhlhahn and his drug dog arrived at 11:49 a.m. Deputy Partin testified that after the drug dog alerted on the vehicle, he searched the vehicle and found no contraband but determined that the glove box was locked. Based on his prior conversation with defendant, Deputy Partin went back to defendant and asked if he could have the keys to the vehicle to unlock the glove box. Defendant replied that he did not have the keys.

-6-

Deputy Partin then spoke with Corporal Kowal, who stated that when defendant was initially patted down defendant was in possession of car keys.  Deputy Partin then asked defendant to stand up, which defendant did.  Deputy Partin did an exterior pat down of defendant's pants pocket, felt the keys, removed them, and used the key to open the glove box.  Drugs were discovered in the glove box.

It is clear that the seizure of the keys by Deputy Partin cannot be justified as a <u>Terry</u> pat-down.  Deputy Partin did not believe the object in defendant's pocket was a weapon or contraband, a prerequisite for a valid <u>Terry</u> seizure.  Unless probable cause existed to arrest defendant at that time, thus justifying the seizure as incident to an arrest, the re-seizure of the keys was unlawful.

Corporal Kowal testified that at the time of the drug dog alert, defendant was being detained in connection with the narcotics investigation.  Defendant was not formally arrested until after the drugs were found in the glove compartment.  The Court finds, however, that there was probable cause to arrest defendant on cocaine charges from at least the time the drug dog alerted to the vehicle.  The drug dog alert provided probable cause to search the vehicle, as the Report and Recommendation found (Doc. #37, pp. 14-15), but it also added to the other facts and circumstances known to the officers to establish probable cause to arrest defendant for cocaine offenses.  The alert by the drug dog to the passenger side of the vehicle, coupled with the information from

Ms. Brooks that defendant had provided her with cocaine and that she believed more cocaine was in the vehicle, was sufficient to establish probable cause to arrest defendant. The fact that the officers did not formally arrest defendant at that time, and perhaps did not feel they had probable cause to do so, is not controlling. Even if a police officer believes probable cause is lacking, a court must still objectively determine if probable cause was present. United States v. Clark, 559 F.2d 420, 425 (5th Cir. 1977)[2], citing United States v. Resnick, 455 F.2d 1127 (5th Cir. 1972); Rankin v. Evans, 133 F.3d 1425, 1433-35 (11th Cir. 1998); United States v. Lindsey, 482 F.3d 1285, 1292 n.5 (11th Cir. 2007).

With probable cause to arrest defendant, the officers were allowed to conduct a full search of his person without any further justification. United States v. Edwards, 415 U.S. 800, 802-03 (1974); United States v. Robinson, 414 U.S. 218, 234 (1973). The fact that defendant was not formally under arrest at the time of the search does not render the search-incident-to-arrest principles inapplicable where, as here, formal arrest quickly followed. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); United States v. Goddard, 312 F.3d 1360, 1364 (11th Cir. 2002); United States v.

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

<u>Banshee</u>, 91 F.3d 99, 102 (11th Cir. 1996).  The seizure of the keys was therefore lawful.

**(3) Statements Made During Detention:**

While defendant was being detained, he was asked various questions by the officers about ownership of the vehicle and keys to the vehicle, prior to being advised of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  The Report and Recommendation found that the answers to these questions should not be suppressed because "[g]eneral routine inquiries into the ownership of the vehicle are not considered custodial interrogations. <u>United States v. Jones</u>, 543 F.2d 1171, 1173 (5th Cir. 1976) and <u>Jernigan v. United States</u>, 2006 WL 2613635, *5 (M.D. Ga. 2006)."  The Court takes a somewhat different tack.

It is undisputed that a defendant is only entitled to <u>Miranda</u> warnings if he is subjected to custodial interrogation.  <u>Acosta</u>, 363 F.3d at 1148 ("The right to <u>Miranda</u> warnings attaches when custodial interrogation begins." (citations omitted)).  It is also undisputed that defendant was asked specific questions by law enforcement officers; this questioning undoubtedly constitutes "interrogation" within the meaning of <u>Miranda</u>.  Finally, it is clear from the discussion above that defendant was in "custody" while he was being detained by the officers.  No objectively reasonable innocent person would have felt free to terminate the interrogation and leave.  "[A] suspect who is detained during a

Terry stop is not free to leave from the beginning of the stop until it ends." Acosta, 363 F.3d at 1148.

Thus, while this is literally a situation involving "custodial interrogation," both the Supreme Court and the Eleventh Circuit have not applied Miranda in such a literal fashion. Berkemer v. McCarty, 468 U.S. 420 (1984); Acosta, 363 F.3d at 1148. To determine whether Miranda warnings were required to precede the questioning about the vehicle and car keys, the question is not whether defendant reasonably would feel free to leave, but whether the stop "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights. Put another way, suspects subjected to restraints comparable to those associated with a formal arrest must be advised of their Miranda rights." Acosta, 363 F.3d at 1149 (citations and internal quotations omitted). Applying this standard to the questioning in this case results in suppression of one conversation.

Defendant was the first person to exit the trailer, and was immediately detained by Deputy Kowal. Deputy Kowal asked defendant if he lived in the residence and if there were other people in the trailer. Defendant responded that he did not live in the trailer and that there were other people in the trailer. The Court finds that this interrogation did not need to be preceded by Miranda warnings

-10-

because defendant was not subjected to restraints comparable to those associated with a formal arrest.

Deputy Kowal turned defendant over to Deputy Marotta at the beginning of the encounter, and proceeded with other aspects of the burglary investigation.  Deputy Marotta handcuffed and conducted a patdown as discussed above, asked what was in defendant's front pocket, and removed the keys.  The Court finds that the question about the keys did not need to be preceded by <u>Miranda</u> warnings because defendant was not subjected to restraints comparable to those associated with a formal arrest.

Defendant was placed in the yard outside the trailer to await the outcome of the other officers in regards to the other occupants in the trailer.  Deputy Marotta then asked defendant whose car was in the carport, and defendant stated it was his sister's car. Deputy Marotta testified that he asked this question for investigative purposes to find out who was in the trailer because other deputies were clearing the trailer at the time.  The Court finds that the questions by Deputy Marotta need not have been preceded by <u>Miranda</u> warnings because this factual situation is more akin to a routine traffic stop than the increased pressures of an arrest.

The third questioning was by Deputy Partin.  Deputy Kowal told Deputy Partin that Ms. Brooks had stated she obtained narcotics from defendant, and Deputy Partin then asked defendant if the black vehicle was defendant's.  Defendant stated that it was his sister's

car.   Deputy Partin asked defendant if he had the keys to the vehicle, and defendant said he did.   The Court finds the questions by Deputy Partin need not have been preceded by <u>Miranda</u> warnings because this factual situation is more akin to a routine traffic stop than the increased pressures of an arrest.

Finally, after the canine arrived and alerted to the vehicle, Deputy Partin searched the unlocked vehicle, finding no contraband. The glove box was locked, so Deputy Partin went back to defendant and asked for the keys.   Defendant stated he did not have them, so Deputy Partin patted down defendant, felt keys in his pocket, removed the keys, and used them to unlock the glove box, where drugs were found.   The Court finds the questions by Deputy Partin needed to have been preceded by <u>Miranda</u> warnings because this factual situation is more akin to an arrest than a routine traffic stop.   Not only had more time expired, but Deputy Partin treated defendant as if he was under arrest by conducting a search which could only be justified as incident to an arrest.   Therefore, the question as to whether defendant had keys, and his answer, will be suppressed as a violation of <u>Miranda</u>.

**B.  May 13, 2008 Incident:**

The Court fully adopts the findings, legal conclusions, and recommendation of the Report and Recommendation as to the May 13, 2008 event.   Defendant's objections are overruled.

Accordingly, it is now

**ORDERED**:

1.    The Magistrate Judge's Report and Recommendation (Doc. #37) is **ACCEPTED AND ADOPTED IN PART** as modified and supplemented above.

2.    Defendant's Motion to Suppress Evidence (Doc. #21) is **GRANTED IN PART AND DENIED IN PART.**  The question by Deputy Partin after the drug dog alert as to whether defendant had the car keys, and defendant's response, are suppressed.  The Motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of October, 2008.

JOHN E. STEELE
United States District Judge


Copies:
Magistrate Judge
Counsel of Record
DCCD

-13-